THE STATE, AARON M. RODWELL, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEW-ARK.

When power is given to the authorities of a city, by their charter, to direct the digging down, draining, filling up, or fencing of lots, pieces, or parcels of ground, in all cases where such digging down, draining or filling up or fencing up is necessary to prevent or abate a nuisance, it is the duty of the court to see that the power conferred is reasonably exercised, and in such mode as to do the least injury to private rights.

---

On *certiorari*, to remove and set aside an ordinance of the common council to abate a nuisance.

Argued before BEDLE and DALRIMPLE, Justices.

For the prosecutor, *T. Runyon.*

For the city of Newark, *John P. Jackson.*

The opinion of the court was delivered by

BEDLE, J. On the 18th day of December, 1869, the city of Newark passed an ordinance directing the filling up of what is therein called an old ditch, in the rear of lots on the south side of Market street, between Plane and Washington streets, to abate a public nuisance. The work was ordered to be done by the street commissioner, and the expense to be assessed, according to the charter, upon the lots. The ordinance was passed under color of section thirty-one, subdivision thirty-two of the amended charter of Newark, (*Laws* 1857, *p.* 136,) which authorizes the common council " to direct the digging down, draining, filling up, or fencing of lots, pieces, or parcels of ground, in all cases where such digging down, draining, filling up, or fencing is necessary to prevent or abate a nuisance." The ordinance does not state in what particulars the same was a nuisance, but the evidence shows that the city must have regarded it as injurious to the health of the neighborhood. The form of the ordinance is objected to, but the only question necessary to be considered is, whether, in substance, it was a reasonable and proper exercise of the power given. The ditch, so called, was originally a natural water-course, taking its rise back of the court-house, at Rankin's pond, running through different lands and across several streets, to and across Plane street, through the lots between Plane and Washington streets, across Washington street, and thence through other lands and across other streets to the meadows.

The lots on Market street, between Plane and Washington, are occupied and used by the prosecutor and others for the tanning and manufacture of leather. The neighborhood is called the swamp, and is an important locality for that

business. Formerly, this stream was used for the supply of the tan-yards and factories with water; but within the last ten years, by the growth and gradual improvement of the city, the bed has been filled up in many places, and the stream become so diverted or absorbed that now no water passes through these lots from the west of Plane street, and to the east of Washington street the filling has been such as to prevent the flow beyond that point. There is a large sewer in Market street, in front of the lots, and a sewer in Washington itreet. With the former, the ditch, (using the word in the ordinance) has no connection, but with the latter it communicates in some way,—to what extent the evidence does not clearly show. This ancient bed through the lots, since the stream has been cut off, has been exclusively used for their ordinary drainage, in rains and snows, and for the waste and refuse waters of the factories and business. There is evidence that at times filthy substances, after undergoing the processes of making morocco, would be thrown into it; but the chief use has been as a sewer for the waste and re-fuse water of the business. Like all water from tan-yards and vats, it undoubtedly becomes impure in the use, but the business is legitimate, with its necessary consequences, sub-ject, of course, to such care as will prevent a nuisance. The nuisance in this case results not from the fact that the bed of the stream is there, but from the condition in which it is kept. Some mode of drainage in this kind of business must necessarily be provided, and the owners have a right to use this natural means for that purpose, if it can be done with-out creating a public nuisance. It is quite apparent that the real difficulty consists in the want of a proper outlet or drainage to the ditch. The improper throwing in of refuse substances has also something to do with it, but the former is the chief cause of the evil. The latter can be corrected under other provisions of the charter, but filling up the bed is not a fair and reasonable mode of correcting the other trouble. A proper drainage, directed under the section and clause already referred to, cannot fail, so far as it appears

from the evidence, to abate the nuisance complained of. If filling up were the only means to accomplish that end, supposing the ditch to be a public nuisance, the powers of police, under proper legislative sanction, are sufficient to authorize it to be done, and any invasion of private interest by a reasonable exercise of the power must be submitted to by the owner as *damnum absque injuria*. The court, however, is bound to see that the powers conferred are reasonably exercised. A reasonable use of the powers in question would require the abatement of a nuisance in such way as to do the least injury to private rights. That should be taken as a fundamental rule. On an indictment, upon judgment of abatement, no more damage must be done than is necessary to accomplish the object. A building cannot be abated simply on account of a noxious use, if not absolutely necessary to prevent it. The nuisance itself must only be abated —no more. 1 *Bishop on Crim. Law*, § 700; *Arch. C. P. & P.* 999.

By analogy to that rule, the city ought not to deprive these owners of the use and convenience of the ditch, unless to do so becomes essentially necessary to abate the nuisance. It is true that the council should be allowed considerable discretion in the mode to be adopted, yet it is very important, out of a due regard to private rights, that the superintending jurisdiction of this court over such proceedings should be firmly maintained, and the council kept within the reasonable rules of law. There seems to be no practical difficulty, from the evidence, in sufficiently draining this ditch, and at the same time leaving it for all the legitimate uses of the business. In that light the council made a wrong selection of their powers. Their action should have been directed to the condition in which the ditch was kept, and the abatement of that condition, rather than in filling it up and depriving the owners of all use of it. To defeat its use for the legitimate purpose of drainage of the lots and receiving the waste water of the business, was an unreason-

able and unnecessary invasion of private rights, when the nuisance complained of, as the case stands before us, could have been remedied by the less severe method of compelling a proper outlet or drainage for the ditch.

The ordinance should be set aside.